**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Sharon Virden, ) | No. CV-11-0757-TUC-BGM |
| Plaintiff, ) | |
| vs. ) | **ORDER** |
| Carolyn W. Colvin, ) Acting Commissioner of Social Security, ) | |
| Defendant. ) | |

Currently pending before the Court is Plaintiff Sharon Virden's Opening Brief (Doc. 22). A response has been filed, but no reply. Plaintiff brings this cause of action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The United States Magistrate Judge has received the written consent of both parties, and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration ("SSA"). The Court will substitute the new Acting Commissioner of the SSA, Carolyn W. Colvin, as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. *See also* Fed. R. App. P. 43(c)(2).

**I.    BACKGROUND**

  *A.    Procedural History*

On October 15, 2007, Plaintiff filed an application for Supplemental Security Income ("SSI") for an allegedly disabling condition due to severe depression, anxiety attacks, and

HIV that arose on May 5, 2005.[1] *See* Administrative Record ("AR") at 12; 152; 163. The Social Security Administration ("SSA") denied this application on February 12, 2008. *Id.* at 74-77. Plaintiff filed a request for reconsideration, and on June 23, 2008, SSA denied Plaintiff's request. *Id.* at 78-81. On July 1, 2008, Plaintiff filed her request for hearing. *Id.* at 83. On January 19, 2010, a hearing was held before Administrative Law Judge ("ALJ") M. Kathleen Gavin. AR at 28. The ALJ issued an unfavorable decision on February 8, 2010. *Id.* at 9-20. Plaintiff requested review of the ALJ's decision by the Appeals Council, and on September 23, 2011, Plaintiff's request for review was denied. *Id.* at 1. Plaintiff filed this cause of action on November 27, 2011. Compl. (Doc. 1).

### B. Factual History

Plaintiff was forty-three (43) years old at the time of the administrative hearing, and thirty-eight (38) at the time of the alleged onset of her disability. AR at 12; 152; 163. Plaintiff possesses a high school education and attended approximately three years of college at the time of her alleged onset. *Id.* at 33. Prior to her alleged disability, Plaintiff worked intermittently as a tax preparer, phone sales representative, house cleaner, hot dog cart owner and customer service representative. *Id.* at 164, 210, 239.

At the administrative hearing, Plaintiff testified that physically she has good days and bad days, with "colitis that flares up . . . [a]t least two to three times a month[.]" *Id.* at 34. Plaintiff further testified that her HIV medications also cause nausea on both good and bad days. *Id.* Plaintiff testified that sometimes they cause her to vomit and have diarrhea, but that her doctors recently switched her medication in an effort to find the right regimen. AR at 36. Plaintiff also testified that the frequency of the more severe side effects varies, sometimes weekly, sometimes monthly. *Id.* Plaintiff also testified that she has Clostridium difficile ("C. diff"), for which she has been hospitalized at least six (6) times in the last one

---

[1] On July 12, 2005, Plaintiff filed an application for disability benefits, she appeared unrepresented at the hearing and was denied. AR at 259; *see also id.* at 47-59.

- 2 -

1  (1) to two (2) years. *Id.* at 35. When Plaintiff is hospitalized due to C. diff, it is usually for
2  between seven (7) and fourteen (14) days. *Id.* Plaintiff further testified that she suffers from
3  fatigue, which results in times that she is too tired to walk her dog or otherwise leave her
4  house. *Id.* at 36-7. Plaintiff testified that she had neck surgery the previous May, and that
5  although she has spasms in her neck once in awhile, she believes that they are caused by
6  stress. AR at 37. Her neck does limit her to lifting less than ten to fifteen pounds. *Id.*
7      Regarding her emotional issues, Plaintiff testified that she suffers from severe bouts
8  of depression, as well as an anger management problem. *Id.* Additionally, she suffers from
9  anxiety attacks. *Id.* at 38. These issues cause her to limit her interaction with people. *Id.*
10 Plaintiff further testified that she goes to meetings at the Southern Arizona AIDS Foundation
11 ("SAAF"), and previously saw a therapist there. AR at 38. Plaintiff testified that she has
12 been off illicit drugs since October 2006, although she occasionally smokes marijuana to
13 combat her nausea. *Id.* at 38-39. Plaintiff denied drinking alcohol, stating that it would
14 cause her colitis to flare up. *Id.* at 39.
15     Plaintiff described her typical "good" day, as getting up, and eating breakfast a little
16 later. *Id.* at 39. Plaintiff testified that she is "not too hungry in the mornings with my pills,
17 because [she] take[s] them first thing." *Id.* Plaintiff further testified that she tries to do a
18 little housework, or walk the dog. AR at 39. Conversely, on a bad day, Plaintiff testified that
19 she "mainly just stay[s] in bed." *Id.* Plaintiff testified that she does not get dressed every
20 day, staying in her pajamas two (2) or three (3) times per week. *Id.* at 40. She stated that she
21 does not feel any reason to get dressed, because she does not have to go anywhere. *Id.*
22 Plaintiff further testified that she showers every few days, again limiting her hygiene when
23 she does not leave her house. *Id.* Plaintiff testified that she naps "anywhere from two to four
24 hours" during the day, and tries to do light housework and interacts with her dog. AR at 40-
25 41. Plaintiff testified that she does do some cooking; however, she is registered with food
26 for life, and they provide her one meal per day, as well as snacks. *Id.* at 41.
27     Plaintiff manages her own money, and sees her daughter every other weekend. *Id.*
28

1  Plaintiff testified that the two of them will watch a video, and "[m]aybe walk to the store to
2  get her a little snack." *Id.* at 42. Plaintiff does not exercise or have any hobbies, and does
3  not own a computer. *Id.* Plaintiff has a few friends affiliated with SAAF, but does not feel
4  comfortable around other people. AR at 42. Plaintiff does not belong to a church or other
5  social organizations. *Id.*

6  Ms. Stacia Schonbrun, a vocational expert, also testified at the administrative hearing.
7  AR at 43. Ms. Schonbrun testified that she had reviewed the exhibits from Plaintiff's file
8  prior to the hearing, but was neither personally acquainted nor had any prior professional
9  contact with her. *Id.* The ALJ found that there was no past relevant work. *Id.* at 44.
10 Accordingly, she asked Ms. Schonbrun, hypothetically, if there would be a significant
11 number of jobs in the national or regional economy for someone that can perform at the light
12 exertional level, but simple and with minimum contact with the general public. *Id.* Ms.
13 Schonbrun opined that she believed there were a significant number of jobs including a maid
14 or parking lot attendant. *Id.* Additionally, the ALJ asked the same question, limited to
15 sedentary work; however, Ms. Schonbrun testified that with those limitations there would not
16 be any jobs. *Id.*

17 Pursuant to request by the Arizona Department of Economic Security ("AZDES"),
18 Plaintiff was examined by Hunter Yost, M.D. and Jeri B. Hassman, M.D. AR at 206-09,
19 608-14, 617-20. Plaintiff saw Dr. Hassman on January 25, 2008, and Dr. Yost on January
20 30, 2008. *Id.* at 608-14, 617-20. Dr. Hassman reviewed Plaintiff's medical records,
21 interviewed her and performed a physical examination. *Id.* at 608-14. Dr. Hassman's
22 diagnosis included Plaintiff's HIV positive status, long history of polysubstance abuse,
23 depression and history of suicidal ideation and psychiatric admissions, as well as suicide
24 attempts, and a history of C. diff. *Id.* at 611. Dr. Hassman further noted that Plaintiff was
25 restricted to lifting and/or carrying occasionally less than twenty (20) pounds and frequently
26 less than twenty-five (25) pounds. Dr. Hassman also reported that Plaintiff was occasionally
27 limited in climbing ramps and stairs, crouching and crawling, and should never climb
28

- 4 -

ladders, ropes or scaffolds. AR at 613. Dr. Hassman further restricted Plaintiff in working around heights. *Id.* at 614. Dr. Yost interviewed Plaintiff and diagnosed crystal methamphetamine abuse in remission since October 31, 2006, Depression NOS, HIV positive status, and Chronic C. diff infections. *Id.* at 618. Dr. Yost further noted that Plaintiff's "social support primarily through the AIDS Foundation and with her daughter" and a current Global Assessment of Functioning ("GAF") of 51-60. *Id.* at 618-19.

Pursuant to request by the Commissioner, Eugene Campbell, Ph.D., reviewed Plaintiff's medical records, as well as the August 23, 2007 denial of Plaintiff's previous SSI claim. *Id.* at 621-34. Dr. Campbell found Plaintiff to be mildly restricted in her activities of daily living and difficulties in maintaining social functioning, and moderately limited in maintaining concentration, persistence or pace. AR at 631. Also pursuant to request by the Commissioner Nick J. Mansour reviewed Plaintiff's medical records, concluding "I believe this case is somatically non-severe." *Id.* at 637. Randall J. Garland, Ph.D. and Robert S. Hirsch, M.D. also reviewed the records in this case. *Id.* at 676-77. Both affirmed the prior evaluation.[2] *Id.*

Plaintiff's medical records, including progress notes from her treating psychiatrist Michael S. Kuntzelman, M.D., were also considered by the ALJ. AR at 19. On April 3, 2009, Dr. Kuntzelman completed a Mental Residual Functional Capacity Assessment regarding Plaintiff. *Id.* at 679-80. Dr. Kuntzelman found Plaintiff moderately limited in the general areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation. *Id.* He further found Plaintiff to have markedly limited in the specific areas of her ability to maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based

---

[2]The Court notes that Dr. Garland's evaluation, although listed Plaintiff's name in the header, stated another individual's name in the analysis.

- 5 -

1 symptoms and to perform at a consistent pace without an unreasonable number and length
2 of rest periods; interact appropriately with the general public; accept instructions and respond
3 appropriately to criticism from supervisors; to get along with coworkers or peers without
4 distracting them or exhibiting behavioral extremes; and to set realistic goals or make plans
5 independently of others. *Id.* Finally, Dr. Kuntzelman identified the majority of Plaintiff's
6 symptoms as moderate or marked. *Id.* at 680.

## II. STANDARD OF REVIEW

The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance." *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

. . .

. . .

- 6 -

## III.     ANALYSIS

The Commissioner follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). This process is defined as follows: Step One asks is the claimant "doing substantial gainful activity[?]" If yes, the claimant is not disabled; Step Two considers if the claimant has a "severe medically determinable physical or mental impairment[.]" If not, the claimant is not disabled; Step Three determines whether the claimant's impairments or combination thereof meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. If not, the claimant is not disabled; Step Four considers the claimant's residual functional capacity and past relevant work. If claimant can still do past relevant work, then he or she is not disabled; Step Five assesses the claimant's residual functional capacity, age, education, and work experience. If it is determined that the claimant can make an adjustment to other work, then he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the instant case, the ALJ found that Plaintiff was not engaged in substantial gainful activity since October 15, 2007. AR at 14. At Step 2 of the sequential evaluation, the ALJ found that "[t]he claimant has the following severe impairments: asymptomatic HIV, depression, anxiety, and history of polysubstance abuse with current marijuana use (20 CFR 416.920(c))." *Id.* The ALJ further found that Plaintiff "also has the following impairments: degenerative disc disease, anterior cervical discectomy and fusion, colitis and clostridium difficile[, but] [b]ecause the record does not indicate any resulting functional limitations, these impairments are considered nonsevere." *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id.* at 15. At step four, the ALJ found that Plaintiff "has no past relevant work." *Id.* at 19. At step five, the ALJ determined that "the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to performing simple work and to having minimal contact with the

1  general public." *Id.* at 16.  Based upon her assessments, the ALJ found that "[b]ased on the
2  application for supplemental security income filed on October 15, 2007, the c]laimant is not
3  disabled under section 1614(a)(3)(A) of the Social Security Act. *Id.* at 20. Plaintiff asserts
4  that the ALJ erred in  1) failing to give controlling weight to treating psychiatrist Dr.
5  Kuntzelman's opinion and 2) failing to develop the record with respect to Plaintiff's activities
6  of daily living.  Pl.'s Opening Brief (Doc. 22) at 1.

### A. *Treating Physician Dr. Kuntzelman*

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citations omitted)). "The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *See also Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Moreover, "[e]ven if a treating physician's opinion is controverted, the ALJ must provide specific, legitimate reasons for rejecting it." *Id.* (citing *Cotton*, 799 F.2d at 1408).

Here, the ALJ failed to meet this burden. While her opinion reviews the medical evidence, in discounting Dr. Kuntzelman's opinion she states only:

> The undersigned assigns little weight to the opinion[] by Dr. Michael D.

- 8 -

> Kuntzelman . . . . Dr. Kuntzelman, the claimant's treating psychiatrist, opined that the claimant was unable to seek or maintain employment as a result of her symptoms of mood instability and anxiety. (Exhibit 23F, pg. 1). Additionally, he rated her mental residual functional capacity from moderately limited to markedly limited. (Exhibit 23F, pgs. 2-3). The undersigned finds that this assessment is considerably more restrictive than contemplated by the most recent treating notes at CODAC regarding her mental impairment.

AR at 19. Conversely, the ALJ placed "great weight on the opinions of the consultative examiners. They were able to personally examine claimant and reach a conclusion that was largely consistent with the overall record." *Id.* at 18. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632. Dr. Kuntzelman was Plaintiff's treating psychiatrist through CODAC. *See* AR at 564-603. As such, his April 3, 2009 opinion represents his conclusions regarding Plaintiff based upon his treatment of her to date. The ALJ failed to set forth "specific and legitimate" reasons supported by "substantial evidence in the record" as required by the Ninth Circuit. *See, e.g., Rollins*, 261 F.3d at 856.

### *B.     Determination of Benefits*

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke,* 379 F.3d at 593 (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings. . . . Rather, we take the relevant testimony

1  to be established as true and remand for an award of benefits." *Id.* (citations omitted); *see also Lester*, 81 F.3d at 834. Further, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.' *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989); *see also Pitzer* [*v. Sullivan*], 908 F.2d[ 502,] 506 [(9th Cir. 1990)] (remanding for payment of benefits where Secretary did not provide adequate reasons for disregarding examining physician's opinion)." *Lester*, 81 F.3d at 834.

Here, the ALJ failed to heed Ninth Circuit precedent and give the opinion of Plaintiff's treating physician Dr. Kuntzelman great weight. *See Lester*, 81 F.3d at 830; AR at 19. The record before the Court is fully developed. Properly crediting the opinion of Dr. Kuntzelman, the ALJ would be required to find Plaintiff is disabled. *See id.*. Accordingly, the final decision of the Commissioner denying Plaintiff's application for benefits is reversed and remanded for an award of benefits.

### *C.   Activities of Daily Living*

In light of this Court's finding that this matter shall be remanded to the ALJ for an award of benefits based upon her failure to give proper weight to the opinion of treating physician Dr. Kuntzelman, the Court declines to address whether she properly developed the record regarding Plaintiff's activities of daily living.

### IV.   CONCLUSION

In light of the foregoing, the Court reverses the Commissioner's decision and remands for an award of benefits.

Accordingly, IT IS HEREBY ORDERED that:

1)   Carolyn W. Colvin, Acting Commissioner of Social Security, is **substituted as Respondent** for Michael Astrue pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure;

2)     Plaintiff's Opening Brief (Doc. 22) is GRANTED;

3)     The Commissioner's decision is REVERSED and REMANDED for calculation and award of benefits.  42 U.S.C. § 405(g); and

4)     The Clerk of the Court shall enter judgment, and close its file in this matter.

DATED this 26th day of March, 2013.

_____
Bruce G. Macdonald
United States Magistrate Judge

- 11 -